## Commonwealth v. Sacco

*William J. MacCarter, Jr.*, district attorney, and *William R. Toal*, assistant district attorney, for Commonwealth.

*E. LeRoy VanRoden*, for defendant.

MACDADE, J., August 16, 1935. — On June 21, 1935, this court (Broomall, J.) allowed a rule to show cause why William J. MacCarter, District Attorney of Delaware County, should not be directed to pay and turn over to the above-named defendant and petitioner, Frank Sacco, the sum of $78.50, alleged to have been taken from the possession of the defendant pending an arrest for conducting an illegal lottery, a misdemeanor under the Criminal Code of March 31, 1860, P. L. 382, secs. 53 and 54, and the Act of June 13, 1883, P. L. 90, sec. 1, 18 PS §§1562 and 1563. To this charge the defendant pleaded guilty on June 14, 1935, and was duly sentenced by the

court (Broomall, J.) viz.: Upon the payment of $250 and costs of prosecution, to be paroled for one year.

The rule, etc., was based upon a petition of the defendant which narrates the above in substance, as follows:

1. He was arrested on March 25, 1935, charged with maintaining and setting up a lottery.

2. At the time of his arrest he had in his possession, on his person, the sum of $78.50 in United States currency.

3. The said money was seized by the arresting officers and turned over to William J. MacCarter, Jr., District Attorney of Delaware County.

4. Your petitioner was indicted on the above charge on June 6, 1935, and pleaded guilty before the Hon. John M. Broomall, 3d, on June 14, 1935, by whom sentence was suspended upon the payment of a fine of $250 and the costs of prosecution.

5. The said fine and costs have been paid in full.

6. The money above set forth, to wit, $78.50, was the property of your petitioner of which he has been wrongfully deprived.

7. Although frequent demand has been made of the district attorney for the return of the said property, he has refused to pay over the sum of $78.50 to your petitioner.

Upon the return day to the said rule the Commonwealth's officer filed an answer in which, inter alia, he set up that, upon the advice of the trial court, he directed a county detective, August Niemeyer, to turn the said money over to the Treasurer of the County of Delaware, which was accordingly done and that the money was, therefore, not in the possession of the district attorney, and in any event it was denied that the said defendant and petitioner had been wrongfully deprived of any money whatsoever, as the said money was being used in the maintaining and setting up of an illegal lottery.

It would appear, therefore, that the principle of "deodand" would apply and that the property and money or

coin of the realm was forfeited to the Commonwealth. The meaning of this principle of law is discussed in Bouvier's Law Dictionary (Rawle's 3d rev.) 844, as follows:

"Deodand. Any personal chattel whatever, animate or inanimate, which is the immediate cause of the death of a human creature. It was forfeited to the king to be distributed in alms by his high almoner 'for the appeasing,' says Coke, 'of God's wrath.' The word comes from *Deo dandum*, a thing that must be offered to God.

"A Latin phrase which is attributed to Bracton has, by mistranslation, given rise to some erroneous statements in some of the authors as to what are deodands. *Omnia quæ ad mortem movent*, although it evidently means all things which tend to produce death, has been rendered *move to death*,—thus giving rise to the theory that things in motion only are to be forfeited. A difference, however, according to Blackstone, existed as to how much was to be sacrificed. Thus, if a man should fall from a cartwheel, the cart being stationary, and be killed, the wheel only would be deodand: while, if he was run over by the same wheel in motion, not only the wheel but the cart and the load became deodand. And this, even though it belonged to the dead man. Horses, oxen, carts, boats, mill-wheels, and cauldrons were the commonest deodands. The common name for it was the 'bana,' the slayer. In the thirteenth century the common practice was that the thing itself was delivered to the men of the township where the death occurred, and they had to account to the king's officers. In very early records the justices in eyre named the charitable purpose, to which the money was to be applied; 2 Poll. & Maitl. 471. In 1840, a railway company in England was amerced £2,000, as a deodand. Deodands were not abolished till 1846. See 1 Bla. Com. 301; 2 Steph. Com. 551: Holmes, C. L. 24."

Originally, deodands went to the Crown, to be applied to charitable uses; they were often granted to lords of

manors. The value was fixed, generally very low, by the coroner's jury. The Laws' Lumber Room 60.

However, whatever motivated the court (Broomall, J.) on July 12, 1935, it decreed that the said petition should be "refused without prejudice, for lack of authority to make the order, it appearing that the fund is not in the hands of the district attorney."

Subsequently, on July 26, 1935, a similar petition was presented and rule granted upon William L. Dickel, county treasurer, to show cause why the latter should not pay to the defendant and petitioner the said sum. This rule was returnable August 9, 1935, to which no answer has been filed by the said county treasurer.

The question is, therefore, when money is seized by the county detectives and being used at the time of seizure in the maintenance and setting up of a lottery, which money was subsequently paid into the county treasury when the defendant pleaded guilty and was duly sentenced, should it be returned to the defendant upon petition praying for a decree directing the county treasurer to pay same over to the defendant.

While money may not be literally termed a device or machine, as set forth in the Act of March 31, 1860, P. L. 382, sec. 60, yet an illegal lottery could not be maintained and set up successfully without it and the sum claimed was actually being used in said lottery. It makes no difference whether in the possession of the defendant or not, it was seized by the district attorney through his representatives as evidence for the Commonwealth in proving that the defendant was maintaining and setting up an illegal lottery. The Commonwealth's officer was successful in proving this fact and the defendant now requests that the evidence be returned to him. For example, if a person were charged with the unlawful possession of liquor or a revolver and he be convicted, is he legally entitled to have the liquor or the revolver returned to him? This certainly in the law would create an anomalous situation. The en-

forcement of the law is not to be regarded as a joke and preposterous situations thus developed by technicalities to create a lack of respect for the administration of criminal justice by returning the instrumentality whereby solely the criminal laws were violated in the most sordid game of "numbers". The money was used for a definite, purposeful object, an object not recognized and protected by the law of the land. It comprises a component integral part of the entire illegal lottery and the money is subject to forfeiture as is the device or machine maintained and set up for an illegal lottery. To thus decide will admirably and adequately equip a determined prosecutor in a relentless war on this lawless fraternity who gyp the poorest classes. Few things so shake the confidence of the people in the processes of justice as unduly emphasizing technicalities and accentuating trivialities. Such rulings always bring the law into disrepute and the administration of the processes thereof into disrespect.

There are two reasons at least why the prayer of the defendant should not be granted, namely:

On the principle of "deodand", the money is forfeited to the Commonwealth; and

Secondly, there is no jurisdiction in this court upon such proceeding as this to order money returned from the county treasury to any person whether he paid it by mistake or not. It would seem that this defendant's rights, if any he has, would have to be determined in a common-law proceeding against the County of Delaware to recover the sum of money in question.

### Order

And now, August 16, 1935, the within petition to return money by the county treasurer to the defendant, Frank Sacco, after hearing and due consideration, be and is hereby refused, and the rule granted thereon to show cause, etc., be and is hereby discharged sec. reg. et sec. leg.